In re Barry Craig GARNEAU, Debtor.

Barry Craig GARNEAU, Plaintiff,

v.

NEW YORK STATE HIGHER EDU-
CATION SERVICES
CORPORATION, Defendant.

Bankruptcy Nos. 89–20807, 89–2074A.

United States Bankruptcy Court,
W.D. New York.

Dec. 20, 1990.

Richard D. Lamborn, Rochester, N.Y.,
for debtor.

Brian V. McAvoy, Rochester, N.Y., for
New York State Higher Educ. Services
Corp.

Joseph Moreno, Office of District Counsel, Buffalo, N.Y.

## MEMORANDUM AND ORDER

EDWARD D. HAYES, Bankruptcy Judge.

The issue to be decided is whether Barry Garneau, the Debtor, is entitled to a "hardship" discharge of his student loan pursuant to 11 U.S.C. § 523(a)(8)(B). Having reviewed the testimony and evidence presented at the trial of this matter, the Court finds that the Debtor has not sustained his burden to prove he is entitled to a "hardship" discharge.

The Debtor filed a petition under Chapter 7 of the Bankruptcy Code on May 3, 1989. His petition listed $1,189 of secured debt and $45,919 of unsecured debt. Unsecured student loans from Chase Lincoln First Bank, N.A. were listed in the amount of $8,888.23. The loan has been assigned to New York State Higher Education Services Corporation, (NYSHESC).

Mr. Garneau's complaint alleges that he has been totally disabled and unemployed in the past, is currently partially disabled, and may be totally disabled and unemployable in the future. He claims to have a problem with his eyes which requires him to wear sunglasses in bright light and claims to be dyslectic. He suffers from asthma that requires him to use Primatene twice a day. The Debtor suffers from an arthritic hip which causes him pain and requires him to use a cane after walking a short distance. He claims the medication prescribed for him only relieves the pain if he "overmedicates" and claims the medication causes him to feel as if he were intoxicated.

The Debtor is 33 years old. He entered the Marine Corps when he was seventeen. In boot camp, he fell from a twenty foot wall sustaining injuries to his hip and back. Subsequently, he was medically retired from the Marines due to asthma but not due to the injuries from the fall. His job history is primarily composed of working as a security guard. During his career, he has been in charge of hiring and supervising personnel, has been an office manager, has conducted training seminars for other security guards, has been a private investigator, store detective and part-time police officer. Mr. Garneau did take a short respite from working as a security guard between 1982 and 1984; he was self-employed in the antique business.

The Debtor was a full-time student at Empire State College between 1985 and 1988 and earned a two year Associates Degree in Business and Economics. He has also earned some credits towards a bachelors degree. After graduating, he attempted to find work in the field of retail management but was unsuccessful. He cited one specific employer who felt he had no experience in the credit field which would qualify him for a position in its credit department. He never used the college placement office, claiming not to have become aware of it until after he started looking for a job. He testified to having mailed three hundred resumes in one year. He also applied for and was turned down for a job with the Rochester City Police Department due to his inability to run a mile and a half. He has applied for maintenance positions, skilled labor positions, and auto service, repair and body work positions all to no avail. He has not had any recent job interviews. For the twenty months prior to the hearing on this matter, Mr. Garneau has operated his own business. He provides a complex of businesses located on four acres with security patrols. The businesses chip in to pay him $6.79 per hour. He has contracted to provide security for 49 hours per week but claims to only work 42 hours per week due to his hip.

The Debtor has the burden to prove by a fair preponderance of the evidence that the repayment of the student loan would constitute an undue hardship. *In re Goldman*, 48 B.R. 364 (Bankr.S.D.N.Y. 1985); *In re Holzer*, 33 B.R. 627 (Bankr.S. D.N.Y.1983). The Debtor must make the following three-part showing to be entitled to relief under § 523(a)(8)(B).

"(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for [him-

self] and [his] dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans."

*Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395 (2nd Cir.1987).

■ The Debtor has not shown he cannot maintain a "minimal" standard of living if he is forced to repay his student loans. Mr. Garneau lives with his mother and does not pay rent. His mother owns her home and is self-sufficient. Mr. Garneau is not married and has no dependents. The schedules originally filed with the Court showed monthly expenses of $360 for rent, $110 for electricity, $200 for gas, $20 for water, $45 for telephone, $195 for other taxes, $30 for health insurance, $53 for insurance, $153 for his auto payment, $150 for transportation, $16 for education, $150 for food, $20 for clothing, $271 for medical, dental and medicines, $31 for laundry, cleaning and reading material, a total of $1,804. However, the testimony revealed several of those items are not the Debtor's expenses. The only household expenses he actually pays is the telephone bill. The taxes listed were real estate taxes which his mother pays. He no longer pays for health insurance and has completed payments on his car. He also testified that his transportation was actually $225 per month and not $150. However, no explanation was given for this increase. The Debtor's monthly expenses are $736.

The Debtor has a monthly income of $1,226.27 based on the 42 hours per week which the Debtor testified he works.[1] The Debtor did state that he intended to hire a subcontractor to work the weekends because he is unable due to his hip. Assum-

ing he does, he will be earning approximately $875.91 per month. Even at this lower figure, he would have excess income of $139.91 per month with which to pay his $110 monthly student loan payment. On this point, it is enlightening that the Debtor made monthly payments of $153 on his car. Prior to the hearing on his complaint, Mr. Garneau finished making payments on his car loan. Thus, there has been a reduction in his monthly expenses without a corresponding increase. The student loan payment is less than the monthly car payment. The Debtor can maintain a minimum standard of living if forced to repay his student loans.

■ The Debtor testified to having post-petition medical expenses which would add to his monthly expenses. Even if the Debtor's income does not exceed his expenses and he could not maintain a minimal standard of living, this alone would not entitle him to relief. *In re Brunner*, 46 B.R. 752 (S.D.N.Y.1985) *aff'd* 831 F.2d 395 (2nd Cir. 1987); *In re Burton*, 117 B.R. 167 (Bankr. W.D.Pa.1990). He must satisfy all three prongs of the test. *In re Harris*, 103 B.R. 79 (Bankr.W.D.N.Y.1989). The Debtor must show that additional circumstances exist indicating that this state of affairs is likely to persist for a significant period of the student loan. "[D]ischargeability of student loans should be based upon the certainty of hopelessness, not simply the present inability to fulfill financial commitment." *In re Briscoe*, 16 B.R. 128, 131 (Bankr.S.D.N.Y.1981).

■ The Debtor's position is that due to his hip problem, which will become worse and incapacitate him in the future, he will not be able to continue in his present line of work as a security guard. His attempts in the past to find alternate work have not been successful. Therefore, he will eventually be unemployed and unable to repay his loans. He has not claimed his eye

1. A review of the Debtor's income tax returns for prior years shows he did not pay any income tax. In 1989, the Debtor's gross income was $14,472. However, his taxable income after deducting operating expenses was $1,058. The Court believes the Schedule of Expenses is designed to reflect all the Debtor's expenses.

The Debtor did not claim that he neglected to list any expenses on his Schedule of Expenses. The Court has not subtracted income tax payments from the Debtor's gross income because it does not believe he will pay any income taxes as long as he operates his own business.

problem or his asthma will prevent him from being employed in the future in an occupation other than as a security guard.

In support of the Debtor's position, he called two doctors, both first year residents, to testify on his behalf. Only one of the doctors had ever examined him, and that examination only lasted for ten or fifteen minutes. He found Mr. Garneau had a mild limit on his range of motion, observed he walked with a cane and had some degenerative joint disease of the right hip. However, being a first year resident, he was not really sure of the diagnosis. He believed Mr. Garneau's condition may deteriorate or stay the same depending on his activity level. The net effect of his condition is pain. He gave no opinion as to whether Mr. Garneau is restricted from doing any type of work. The second doctor had no recollection of ever examining the Debtor. His only contact with the Debtor was to prescribe medication for the Debtor at the request of the head physician at the clinic. He testified the medication has no effect on alertness. There is no competent medical evidence that Mr. Garneau's condition will preclude him from being gainfully employed. *See In re Burton*, 117 B.R. at 171.

In addition, the Debtor admits he was denied social security disability based on his 12 years of education and his ability to do sedentary work. The Debtor has earned an associates degree and has some credits towards his bachelors degree. Positions held in the past have given him management training and supervisory experience. By the Debtor's own admission, he will no longer be able to maintain his present employment. Thus, circumstances will force the Debtor to change careers. It appears that the Debtor is prepared to make that change. This is not a case where the Debtor is bed ridden. The inability to find work in the past which can be performed without the need for extensive walking does not necessarily lead to the conclusion that the Debtor will never find such employment. Therefore, he has not shown that his medical condition will prevent him from being employed throughout the repayment period.

Finally, the Debtor has not shown he made a good faith effort to repay his loans. The Debtor has never made any payments on his loans. The loans became due in December of 1989. He filed his petition on May 3, 1989. It does not appear the Debtor ever requested a deferment of his loans. The failure to show a good faith effort to repay the loans requires the Court to deny the discharge of those loans. *In re Brunner*, 831 F.2d at 395. The Debtor's obligations to NYSHESC is not dischargeable and it is so ordered.