**In re Sheila Johnnie Mae WEBB, Debtor.**

**The CADLE COMPANY, Plaintiff,**

v.

**Sheila Johnnie Mae WEBB, Defendant.**

**Bankruptcy No. 90–1507–BKC–3P7. Adv. No. 90–200.**

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

Oct. 10, 1991.

Matthew A. Myers, Jacksonville, Fla., Timothy J. Taber, Newton Falls, Ohio, for plaintiff.

John S. Winkler, Jacksonville, Fla., for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This proceeding came before the Court upon complaint seeking to except a debt from discharge pursuant to 11 U.S.C. § 523(a)(8). A trial was held on June 4, 1991, and upon the evidence presented, the Court enters the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

In this proceeding, the parties contest whether two federally insured student loans received by Defendant are dischargeable under the terms of § 523(a)(8) of the Bankruptcy Code. Defendant filed a Chapter 7 Bankruptcy Petition on April 20, 1990.

The evidence supports that Defendant obtained two educational loans while attending a community college in Jacksonville, Florida. Both loans were insured and guaranteed by the State of Florida. The first loan was made on November 22, 1983, in the principal amount of $1,250. The second loan was made on December 30, 1983, for a similar sum. Defendant executed a Promissory Note for each loan and Plaintiff is the current owner and holder.

Defendant deferred repayment of the educational loans while she pursued a degree in computer science. The loans were not due until she terminated her studies. She obtained an Associate of Science degree from the community college. She admitted during the trial that the loans first became due less than five years before her bankruptcy filing date.

In support of her claim that repayment of the student loans would be an "undue hardship," Defendant testified that she was unemployed and has three children to support. One of her children has a learning disability. Defendant was divorced in 1989 and has custody of the three children. She testified that her former husband is legally obligated to make child support payments in the amount of $106 monthly, but she has never received any payment.

Defendant was discharged from her full time employment at Pepsi–Cola Bottlers of Jacksonville on April 19, 1991. Her annual income in 1988 was approximately $12,400, and her annual income in 1989 was approximately $12,500. As of the date of trial,

Defendant's only income was unemployment compensation in the amount of $320 monthly. The payments began on April 23, 1991, and are to continue for one year. She testified that, since being laid off, her monthly automobile insurance payments, rent and food expenses greatly exceeded her monthly income.

Until approximately six weeks prior to trial, Defendant had been continuously engaged in full time employment at salary levels which would at least meet the monthly financial obligations of herself and her dependents. Since being laid off she has been actively pursuing new employment. Based upon her education, experience, communication skills, and other personal qualities which she demonstrated at trial, the record as a whole supports a finding that Defendant will be able to obtain full time employment within six months of the date of trial. At that time, she should have sufficient income to make payments on her educational loans.

The total amount due and owing on the educational loans is $4017.73. On the first loan, Defendant owes $1788.70 as principal and interest, and $76.87 as late charges for a total of $1865.57. On the second loan, Defendant owes $2064.15 as principal and interest, and $88.01 as late charges for a total of $2152.16.

The sole issue before the Court is whether excepting the educational loans from discharge will impose an undue hardship on Defendant and her dependents.

## CONCLUSIONS OF LAW

The controlling Bankruptcy Code provision, 11 U.S.C. § 523(a)(8), provides in relevant part:

(a) A discharge under ... this title does not discharge an individual debtor from any debt—

(8) for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a nonprofit institution, unless—

(A) such loan first becomes due before five years [amended in 1990 to seven years] (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

■ In general, a creditor seeking a judgment of nondischargeability bears the burden of proof through a preponderance of the evidence. *Grogan v. Garner,* —— U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Yanks,* 931 F.2d 42, 43 (11th Cir.1991); *In re Burnett,* 129 B.R. 299, 300 (Bankr.M.D.Fla.1991).

■ In a complaint to determine dischargeability under the "undue hardship" exception, the burden is divided between the parties. *In re D'Ettore,* 106 B.R. 715, 717 (Bankr.M.D.Fla.1989). "The creditor must first establish the existence of the debt, that it is owed to or insured or guaranteed by a governmental agency or a nonprofit institution of higher learning, and that it first became payable less than five years prior to the date the bankruptcy petition was filed." *Id.; In re Norman,* 25 B.R. 545, 548 (Bankr.S.D.Cal.1982). None of these matters is in dispute in this case.

The burden then shifts to the Debtor to prove "undue hardship." *In re D'Ettore,* 106 B.R. at 718; *In re Binder,* 54 B.R. 736, 739 (Bankr.N.D.1985). "It is well established that statutes are to be interpreted so that they carry out the intent of the legislature. As a result, the bankruptcy courts have generally applied the § 523(a)(8)(B) 'undue hardship' exception narrowly." *In re D'Ettore,* 106 B.R. at 718; *In re Keenan,* 53 B.R. 913, 918 (Bankr.D.Conn.1985).

Based upon the evidence presented, in order to make a finding of dischargeability, the Court would be required to find the existence of "undue hardship" within the meaning of 11 U.S.C. § 523(a)(8)(B). *See In re Bowen,* 37 B.R. 171 (Bankr.M.D.Fla. 1984).

The type of "hardship" that is required under the "undue hardship" exception has been discussed at length in recent Bankruptcy Court opinions:

[T]he mere fact that repayment of the student loan may impose a hardship on the debtor is not enough to permit dischargeability. *In re Collier*, 8 B.R. 909, 911 (Bankr.S.D.Ohio 1981). Indeed, most or possibly all debtors could make a "garden variety" hardship claim in good faith. Congress intended to require more than simply a present inability to pay the obligation. However, the words, "undue hardship" are not defined in the Bankruptcy Code; instead, they are words of art to be interpreted by the court. *In re Courtney*, 79 B.R. 1004, 1010 (Bankr.N.D.Ind.1987). The determination of whether repayment of the student loan will cause "undue hardship" is inherently a question of fact for the court to decide based upon the particular circumstances of the bankruptcy case. *In re Andrews*, 661 F.2d 702, 704 (8th Cir.1981).

*In re D'Ettore*, 106 B.R. at 718.

It is well settled that the basis of hardship must be long-term in order for the Court to find dischargeability under § 523(a)(8). *In re Bowen*, 37 B.R. 171, 172 (Bankr.M.D.Fla.1984); *see also In re Medeiros*, 86 B.R. 284, 286 (Bankr.M.D.Fla. 1988); *In re Conard*, 6 B.R. 151, 152 (Bankr.W.D.Ky.1980); *In re Bagley*, 4 B.R. 248 (Bankr.D.Ariz.1980); *In re Johnson*, 5 B.C.D. 532 (Bankr.E.D.Pa.1979). In determining the existence of undue hardship, the Court must look to the debtor's future prospects, as well as her current situation. *In re Bowen*, 37 B.R. at 172–173.

■ To prove undue hardship, the Debtor must show that her financial resources will allow her to live only at a poverty level standard for the foreseeable future if she is obligated to repay the student loan. *In re Medeiros*, 86 B.R. at 286. The debtor must also demonstrate that he or she is attempting to minimize living expenses and maximize financial resources. *Id.; In re Frech*, 62 B.R. 235 (Bankr.D.Minn.1986).

The Second Circuit has recognized a test which is consistent with reported cases in the Eleventh Circuit and in other Circuits and which requires the debtor to demonstrate her "near poverty" conditions, the lack of any change in the foreseeable future, and good faith:

Based on legislative history and the decisions of other district and bankruptcy courts, [we adopt] a standard for "undue hardship" requiring a three-part showing: (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant ... period; and (3) that the debtor has made good faith efforts to repay the loans.

*Brunner v. New York State Higher Education Services, Corp.*, 831 F.2d 395, 396 (2d Cir.1987); *In re Garneau*, 122 B.R. 178, 179–180 (Bankr.W.D.N.Y.1990); *In re Harris*, 103 B.R. 79, 80 (Bankr. W.D.N.Y.1989); *In re Cahill*, 93 B.R. 8, 11 (Bankr.N.D.N.Y.1988); *see also In re Medeiros*, 86 B.R. at 286; *In re Bowen*, 37 B.R. at 172–173.

■ In this case, it is clear that Defendant had no financial ability to make payments on the educational loans as of the date of trial. However, there is no evidence that her inability to make payments is permanent. The record demonstrates no additional circumstances indicating a likelihood that her current inability to find any work will extend for any significant period of time. She is not disabled or elderly. No evidence was presented indicating a total foreclosure of job prospects in her area of training.

As noted, Defendant is educated, experienced and articulate. Although predicting future income is problematic, *Brunner*, 831 F.2d at 396, the record supports the conclusion that an obligation for Defendant to repay her educational loans in the future would not represent an "undue hardship."

■ It is within the proper exercise of the equitable powers of this Court to set forth a payment schedule which takes into account the defendant's temporary severe difficulties. *In re Bowen*, 37 B.R. at 173. As this Court has previously noted:

While the literal language of the statute does not create such leeway, several

bankruptcy courts faced with the same question have concluded that the "either/or" result suggested by the statute is unnecessarily harsh in many less-than-clearcut cases. Several courts have concluded that it is appropriate, and within the policy of the statute, to enter a judgment which holds the educational loan debt to be non-dischargeable, but restructures repayment of the indebtedness in such a way as to take into account severe but non-permanent difficulties experienced by a debtor.

*Id.* (citing *In re Brown,* 18 B.R. 219 (Bankr.D.Kan.1982); *In re Archie,* 7 B.R. 715 (Bankr.E.D.Va.1980); *In re Hemmen,* 7 B.R. 63 (Bankr.S.D.Ala.1980); *In re Littell,* 6 B.R. 85 (Bankr.D.Or.1980)); *see also In re Medeiros,* 86 B.R. at 286 (payments of $50 per month after one year deferral).

Accordingly, pursuant to 11 U.S.C. § 523(a)(8), the debt owing to Plaintiff for educational loans made, insured or guaranteed by a governmental unit is not dischargeable. The Court shall defer Plaintiff's right to execute on a judgment relating to the educational loans and shall establish a payment schedule which will require the debtor to pay to Plaintiff the sum of $50 on January 15, 1992, and on the 15th of each month thereafter until the entire indebtedness of $4017.73 is paid in full.

A separate Final Judgment in favor of the Plaintiff will be entered.

## FINAL JUDGMENT

Upon the Findings of Fact and Conclusions of Law separately entered, it is

ORDERED:

1.  Final Judgment is entered in favor of Plaintiff, The Cadle Company for $4,017.73 and against the Defendant, Sheila Johnnie Mae Webb.

2.  Pursuant to 11 U.S.C. § 523(a)(8), this debt for educational loans made, insured or guaranteed by a governmental unit is not dischargeable.

3.  Plaintiff's right to execute upon this Final Judgment shall be withheld if Defendant complies with the following payment schedule.

4.  Defendant shall pay the sum of $50.00 on the fifteenth of each month beginning January 15, 1992, to The Cadle Company, c/o Ms. Ruth A. Cadle, 4363 La France Street, Newton Falls, Ohio 44444, until the Final Judgment is paid in full.

5.  If the Defendant fails to timely make any payment required by paragraph 4 above, and the failure to make any such payment continues unaccomplished for a period of ten (10) days, Plaintiff may secure an execution upon this Final Judgment, without further hearing, upon filing an Affidavit stating that a payment has not been timely made.