In re Carol A. LAWSON, Debtor.

Carol A. LAWSON, Plaintiff,

v.

HEMAR SERVICE CORPORATION OF AMERICA, n/k/a EDU Serve Technologies, Inc., as servicing agent for Hemar Insurance Corporation of America, successor in interest to Norwest Bank South Dakota, National Association and Student Loan Marketing Association and Northstar Guarantee, Inc., Defendants.

Bankruptcy No. 93–13351–8P7.
Adv. No. 94–557.

United States Bankruptcy Court
M.D. Florida,
Tampa Division.

Dec. 11, 1995.

Charles A. Medearis, St. Petersburg, Florida, for plaintiff.

Larry Foyle, Tampa, Florida, Northstar Guarantee, Roy Cohn, Tampa, Florida, HEMAR Insurance, Jeffrey A. Redmon, St. Paul, Minnesota, HEMAR Insurance, for defendants.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

ALEXANDER L. PASKAY, Chief Judge.

THE MATTER under consideration involves the dischargeability, vel non, of a debt

---

owed by Carol A. Lawson (debtor) to Northstar Guarantee, Inc. (Northstar) and Hemar Service Corporation of America (Hemar), the Defendants named in this adversary proceeding commenced by the Debtor. The immediate matters under consideration are two Motions for Summary Judgment, one filed by Hemar and the other by Northstar. Both defendants contend that there are no genuine issues of material fact and they are entitled to a determination that the debts owed are non-dischargeable by virtue of § 523(a)(8) of the Bankruptcy Code. Both movants are relying on facts which they contend to be undisputed which can be briefly summarized as follows:

The Debtor, after having graduated from college where she studied international relations at Michigan State University (MSU), attended Thomas M. Cooley Law School in Lansing, Michigan. She graduated from the law school and obtained a juris doctor degree in May of 1993. She financed her years in law school through educational loans including, among others, one obtained from Northwest Bank South Dakota (Northwest), which loan was in turn insured by Hemar. On December 1, 1989, the Debtor executed a Promissory Note in favor of Northwest in the principal amount of $12,500. On May 14, 1990 she executed a second Promissory Note payable to Northwest in the principal amount of $1,000. On November 5, 1990 the Debtor executed a third Promissory Note payable to Northwest in the principal amount of $13,500. In addition to the foregoing, she also executed a Note in favor of Northwest on August 1, 1991 in the principal amount of $15,000. On April 2, 1992, she executed a Promissory Note in the principal amount of $1,197. These notes called for interest payable at the variable rate of 9% per annum. As common, all these notes provided that should the borrower default on payment of the obligations she would be responsible for all attorney's fees and costs incurred by the lender in enforcing the obligations as well as for late fees. According to the Third Amended Complaint, the Debtor is indebted to Northwest and the total amount of the student loan she obtained from Northwest is $43,197 principal plus interest.

It is without dispute that the Debtor never made any payments on any of these notes and on January 5, 1994 filed a Petition for Relief under Chapter 7 of the Bankruptcy Code. It is without dispute that all these obligations would be ordinarily non-dischargeable unless the Debtor is able to establish that to require her to repay the loans would place an undue hardship on the Debtor or the Debtor's dependents.

In its motion, Northstar also relies on the Debtor's Third Amended Complaint, the Debtor's Schedules and Statement of Affairs. Although Schedule F and the Amendment to Schedule F, filed by the Debtor, failed to disclose a liability to Northstar, the Debtor in Count II of her Complaint admits that she is indebted to Northstar in the approximate amount of $38,000. According to her Complaint, this represents a loan referred to as "SLS Loans" she obtained between January 1991 and April 1993 and she obtained it for the purpose of permitting her to attend the law school in Michigan. It is without dispute that these loans became due within the seven year period provided for by § 523(a)(8), and thus ordinarily would be nondischargeable unless this record warrants the conclusion that to require her to repay this student loan would place an undue hardship on her. It is without dispute and is admitted that she did not attempt to negotiate with Northstar, did not attempt to seek a negotiation either for the purpose of reduction or moratorium of this obligation, and she has not made any payments on this loan just as she did not make any on the loan guaranteed by Hemar.

The dischargeability of student loans has been subject to litigation over the years and there are numerous decisions dealing with this subject, particularly with the question of what is really an "undue hardship," a term which is not defined by the Code. In the case of *In re D'Ettore*, 106 B.R. 715 (Bkrtcy. M.D.Fla.1989), this Court weighed several factors which are considered to be relevant to the resolution of these questions which are as follows:

1. Total incapacity now and in the future to pay one's debts for reasons not within the control of the debtor. *In re Rappaport*, 16 B.R. 615, 617 (Bankr.N.J.1981);

2. Whether the debtor has made a good faith effort to negotiate a deferment or forbearance of payment. *In re Rice*, 13 B.R. 614, 617 (Bankr.S.D.1981);

3. Whether the hardship will be long-term. *In re Bowen*, 37 B.R. 171, 172–173 (Bankr.M.D.Fla.1984);

4. Whether the debtor has made payments on the student loan. *In re Shoberg*, 41 B.R. 684, 688 (Bankr.Minn.1984);

5. Whether there is a permanent or long-term disability of the debtor. *In re Wilson*, 76 B.R. 19, 20 (Bankr.R.I.1987);

6. The ability of the debtor to obtain gainful employment in the area of study. *In re Bell*, 5 B.R. 461, 463 (Bankr.N.D.Ga.1980);

7. Whether the debtor has made a good faith effort to maximize income and minimize expenses. *In re Johnson*, 5 BCD 532, 537–38 (Bankr.E.D.Penn.1979);

8. Whether the dominant purpose of the bankruptcy petition was to discharge the student loans. *In re Johnson, supra*; and

9. The ratio of the student loan to the total indebtedness. *In re Erickson*, 52 B.R. 154, 159 (Bankr.N.D.1985).

 While it is true that one should consider the totality of the circumstances and no single factor should be controlling, at first blush it appears that this record would not warrant the conclusion that to require the Debtor to repay these student loans, at least in part, would represent an undue hardship. The claim of hardship primarily centers around the following contentions urged by the Debtor.

First, she claims to suffer from a debilitating disease, dyslexia, which impairs the ability to read in an orderly fashion and requires the sufferer to read extremely slow. In addition, she also contends that due to this condition she reverses letters and numbers therefore she has difficulty dealing with any problem which involves numbers. She claims to have been classified as disabled and based on that classification when she attempted to take the Florida Bar exam, the Bar was required to permit her extra time to take the DVR test in order for her to complete the examination. Her Affidavit contains unsubstantiated opinions by doctors, all of which would not be competent evidence and could not be considered because of the hearsay Rule, F.R.E. 802. She contends that her condition is permanent and will never change and because of this condition, she will not be able to obtain a meaningful, economically rewarding position in the field of law. In addition, she also claims to suffer from other medical problems such as allergies, asthma, scoliosis and psoriasis. In addition, she also alleges that she has an incurable disease which, due to the stigma associated with it, she is unwilling to disclose. She claims to have difficulty with her kidneys due to a car accident and has had in the past repeated kidney, bladder and urinary tract infections. She also had cervical cancer and other female problems, suspected to be endometriosis. She also contends that she suffers from arthritis in her left knee and in her hands and that her vision requires toric contacts and she is legally blind in one eye without contacts.

Notwithstanding the seemingly debilitating poor health conditions just described, the Debtor did graduate from college and law school and she is currently employed with the State of Florida earning $9.69 per hour. Although on the Schedule of Income and Expenditures filed with the Schedules she indicates that she had no income, according to her Affidavit she currently has a gross monthly income, as of November 1995, of $1,683.85 and, after deductions, a net disposable income of $1,279.99. Her total expenses are stated to be $1,696.33, or presenting a negative picture of approximately $400 per month. The expense items scheduled include certain items which are currently not being paid. In answer to Interrogatory # 14 she indicates a recurring monthly expense of $50 for contact lenses, $20 for hair coloring and $20 for cat food/litter.

Considering the facts as outlined above and applying those to the undisputed facts as they appear from this record, it appears that her condition is in fact irreversible and permanent which in turn would prevent her in the future from earning enough monies to repay, at least in part, these student loans. While it might be true that she will not be

able to practice law, a point not quite clear although one might reasonably infer this from the fact that she so far has not been able to pass the Bar exam, she certainly could obtain a position like the government position she currently holds which involves utilization of her legal education. For instance, she is currently applying to be enrolled in the guardian ad litem program, and even on her current job she is required to consider the law applicable to claims and evaluate claims while acting in her capacity as a claims analyst.

The total student loan sought to be discharged represents in excess of 73% of the total obligations and she sought relief in this Court almost immediately after these notes became due and payable. While she attempted a couple of contacts with Hemar to negotiate the loan, she did not ever attempt to negotiate with Northstar in order to obtain a reduction of the monthly payments or a moratorium.

Having considered the totality of the facts, it is the considered view of this Court that the Debtor failed to establish with the requisite degree of proof that the requirement to repay these loans would produce an undue permanent hardship thus the Motion for Summary Judgment filed by Hemar and Northstar are well taken and should be granted.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motions for Summary Judgment be, and the same are hereby, granted. It is further

ORDERED, ADJUDGED AND DECREED that a separate final judgment shall be entered in accordance with the foregoing.

DONE AND ORDERED.