**In re Paulette R. HOLMES, Debtor.**

**Paulette R. HOLMES, Plaintiff,**

v.

**SALLIE MAE LOAN SERVICING CENTER, Defendant.**

Bankruptcy No. 96–02580–6B7.
Adv. No. 96–0198.

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

Jan. 2, 1997.

David McFarlin, Orlando, FL, for Plaintiff.

Michael Tessitore, Orlando, FL, for Defendant.

### *MEMORANDUM OPINION*

ARTHUR B. BRISKMAN, Bankruptcy Judge.

This matter came before the Court on Paulette R. Holmes Complaint to Determine Dischargeability of Debt pursuant to the United States Bankruptcy Code § 523(a)(8)(B). Appearing before the Court were David McFarlin, counsel for Plaintiff/Debtor, Paulette R. Holmes; and Mike Tessitore, counsel for United Student Aid Funds, Inc. as successor in interest to Sallie Mae Loan Servicing Center. After reviewing the pleadings, evidence, exhibits, live testimony of Paulette R. Holmes, arguments of counsel, and authorities for their respective positions, the Court makes the following Findings of Fact and Conclusions of Law.

### *FINDINGS OF FACT*

The Debtor, Paulette R. Holmes ("Mrs. Holmes") filed for bankruptcy under chapter 7 of the United States Bankruptcy Code on April 25, 1996. Defendant, United Student Aid Funds, Inc. ("USA Funds") as successor in interest to Sallie Mae Loan Servicing Center ("Sallie Mae") by assignment from Sallie Mae is a creditor holding an unsecured claim for a student loan in the amount of $9,900.00 plus interest accruing at a fixed annual rate of 8%. Mrs. Holmes filed a Complaint to Determine Dischargeability of Debt pursuant to 11 U.S.C. § 523(a)(8) on May 30, 1996.

(Doc. 1). Defendant filed its Answer on June 26, 1996. (Doc. 8).

Mrs. Holmes applied for and received from 1989 to 1993 guaranteed student loans as follows:

1. July 1989 $1,207.00
2. August 1990 $800.00
3. August 1991 $1,000.00
4. August 1991 $1,200.00
5. August 1992 $2,625.00
6. August 1992 $783.00
7. August 1993 $2,000.00

for a total of $9,615.00. Mrs. Holmes incurred the loans to pay for her undergraduate education at St. Leo College in Georgia. She attended St. Leo College as a full-time student and received her bachelor's degree in Human Resources Administration in 1993.

Mrs. Holmes is an employee of the Department of the Army ("Army"), Armed Forces Recreation Center, Orlando, Florida, as a Personnel Management Specialist since 1992. Mrs. Holmes is engaged in a career which is directly related to her undergraduate education. Her undergraduate degree allowed her to advance more quickly in the Army than she would have otherwise.

The payments Mrs. Holmes made on the loans are as follows:

1. September, 1994 $59.71
2. January, 1995 $59.61
3. August, 1995 $59.00
4. February, 1996 $64.38
5. March, 1996 $64.38

for a total of $307.08. Mrs. Holmes received a forbearance for the loans obtained June through July 1994. The loans were consolidated and monthly payments were reduced to $59.71 in November 1995, by agreement with Sallie Mae.

Mrs. Holmes is a single mother, age 38. She does not suffer from any physical or mental disability or impairment. Mrs. Holmes presently has two dependent children; Alicia Holmes, age 17 and Donald Holmes, age 10. The children do not suffer from any physical or mental disability or impairment. Mrs. Holmes was divorced from her husband in September 1994. The Final Judgment of Dissolution of Marriage granted Mrs. Holmes custody of three minor children, child support and alimony from her former spouse. He has failed to pay child support or alimony and his residence is currently unknown.

Mrs. Holmes receives net income at a rate of $2,070 per month. Her expenses are $2,074.67 per month. Mrs. Holmes' tax returns shows an adjusted gross income of $24,863.00 in 1994 and $28,034.00 in 1995. Mrs. Holmes and her dependents receive medical and dental coverage from the Army which comes directly from a monthly deduction in her salary.

The Army also provides her with a retirement plan known as the U.S. Army NAF Employee 401-K Savings Plan ("Plan"). The Plan allows Mrs. Holmes to contribute a portion of her salary to an investment account. The Army matches a percentage of the contribution. Mrs. Holmes contributed $4,283.94 towards the plan as of September 30, 1996. She contributed $980.26 to the Plan in 1996 as of September 30, 1996 and $355.64 from July through September 1996. The Army matched her contributions. The market value of the account as of September 30, 1996 was $9,043.26. Mrs. Holmes has a vested interest in $5,595.28 of the total account balance.

Mrs. Holmes owns a home located at 2626 Numilla Drive, Orlando, Florida. The home was purchased in August 1994 for $83,000. The mortgage amount is $83,000. The monthly mortgage payment is $767.67. Mrs. Holmes defaulted on the mortgage in July 1996 as she missed two payments. Mrs. Holmes recommenced making the monthly mortgage payments in September 1996 and has made a payment every month since. The mortgage lender has accepted all monthly mortgage payments Mrs. Holmes has made and Mrs. Holmes is currently working with the mortgage lender with regard to curing the two month default. Mrs. Holmes believes that she will build up equity in the home as she continues to make the monthly mortgage payments. Mrs. Holmes estimates the current value of her home at $83,000.

Mrs. Holmes' 1992 Toyota was repossessed by SunTrust Bank on November 10, 1996

based on payment default. Mrs. Holmes purchased a 1996 used Mazda Protégé for $14,449.57 on or about October 25, 1996. The down payment in the amount of $2,000 was donated by a church member. Mrs. Holmes has budgeted for and is currently making monthly payments on the vehicle in the amount of $312.00. The vehicle is encumbered by a lien in the amount of $12,091.92. The vehicle has a value of $10,900.

Mrs. Holmes owes a tax obligation in the approximate amount of $8,200 based on an audit of a joint tax return for the tax year of 1993. Mrs. Holmes' former husband is a co-obligor on the tax obligation and is also liable for the full amount.

There is no evidence that Mrs. Holmes' difficulty to repay her student loans constitutes an undue hardship. She is educated, experienced and employed. She is not disabled nor elderly. There is no evidence that her difficulty in making payments is permanent. An obligation for Mrs. Holmes to repay her educational loans in the future would not represent an undue hardship. Mrs. Holmes owes United Student Aid Funds, Inc. as successor in interest to Sallie Mae Loan Servicing Center student loans in the amount of $9,900.00 plus interest accruing at a fixed annual rate of 8%.

### CONCLUSIONS OF LAW

The issue before the Court is whether excepting Mrs. Holmes' educational loan from discharge would impose an undue hardship on her and her dependents. Section 523(a)(8)(A) and (B) of the United States Bankruptcy Code provides in relevant part:

(a) A discharge under ... this title does not discharge an individual debtor from any debt—

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship, stipend, unless—

(A) such loan, benefit, scholarship, or stipend overpayment first became due more than 7 years (exclusive of any applicable

suspension of the repayment period) before the date of the filing of the petition; or

(B) excepting such debts from discharge under this paragraph will impose undue hardship on the debtor and the debtor's dependents;

. . . . .

11 U.S.C. § 523(a)(8)(A) and (B).

A creditor seeking a judgment of nondischargeability generally bears the burden of proof through a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Yanks,* 931 F.2d 42, 43 (11th Cir.1991); *In re Burnett,* 129 B.R. 299, 300 (Bankr.M.D.Fla. 1991). But the burden is divided between the parties in a complaint to determine dischargeability under the "undue hardship" exception. *D'Ettore v. Devry Institute of Technology (In re D'Ettore )* 106 B.R. 715, 717 (Bankr.M.D.Fla.1989). The existence of the debt owed to or insured or guaranteed by a governmental agency or a nonprofit institution of higher learning that first became payable less than seven years prior to the date the bankruptcy petition was filed must first be established. *Id.; In re Norman,* 25 B.R. 545, 548 (Bankr.S.D.Cal.1982). This matter is not in dispute.

The Debtor must then prove "undue hardship". The "undue hardship" exception applies narrowly. *D'Ettore v. Devry Institute of Technology (In re D'Ettore )* 106 B.R. at 718; *In re Keenan,* 53 B.R. 913, 918 (Bankr. D.Conn.1985). The mere fact that repayment of the student loan may impose hardship on the debtor is not enough to permit dischargeability. It is well settled that the words "undue hardship" are words of art whose definition is left to discretionary judgment of the court. *Matter of Hemmen,* 7 B.R. 63 (Bankr.N.D.Ala.1980). The Court must find the existence of "additional circumstances" that make it unreasonable to expect that the debtor and his dependents are likely for the foreseeable future to effect an improvement in their present needful circumstances. *Brunner v. New York State Higher Education Services Corp.,* 831 F.2d 395, 396 (2d Cir.1987); *see In re Connolly,* 29 B.R.

978, 982 (Bankr.M.D.Fla.1983); *In re Webb*, 132 B.R. 199, 202 (Bankr.M.D.Fla.1991); *In re Medeiros*, 86 B.R. 284, 286 (Bankr. M.D.Fla.1988); *In re Bowen*, 37 B.R. 171, 172 (Bankr.M.D.Fla.1984).

 Hardship must be long term. The debtor's future prospect as well as current situation is relevant. The debtor must show that her financial resources will allow her to live only at a poverty level standard for the foreseeable future. *Cadle Co. v. Webb*, 132 B.R. 199, 201 (Bankr.M.D.Fla.1991); *In re Medeiros*, 86 B.R. at 286. A three-part test or factors[1] has been developed to determine whether an exception from dischargeability for an educational loan will constitute an undue hardship. *Pichardo v. United Student Aid Funds, Inc.*, 186 B.R. 279, 282 (Bankr.M.D.Fla.1995); *In re Garcia*, 135 B.R. 437, 439 (Bankr.S.D.Fla.1992); *In re Connolly*, 29 B.R. at 982. First, the debtor's ability to maintain a minimal standard of living for herself and her dependents if forced to repay the loan. Second, the likelihood that a present inability to repay the loan will persist into the foreseeable future. Third, the debtor's good faith effort to obtain employment and minimize expenses.

 Mrs. Holmes fails to demonstrate an inability to maintain more than a minimal standard of living even if the loan is fully discharged. Her present inability to repay the loan will not continue into the foreseeable future as she has a stable job which provides her with income, medical care, and even a pension. Mrs. Holmes is presently employed and she fails to minimize expenses as evidenced through her recent purchase of a car. Mrs. Holmes has sufficient income to repay these loans, especially considering her health, age and present employment.

Repayment of this student loan would not constitute an undue hardship to the debtor, and therefore, the debt should be determined to be non-dischargeable. The relief sought in Mrs. Holmes Complain to Determine Dischargeability pursuant to 11 U.S.C. § 523(a)(8) is due to be denied.

### ORDER

Paulette R. Holmes' Complaint to Determine Dischargeability of Debt pursuant to 11 U.S.C. § 523(a)(8), having been tried before the Court and after reviewing the pleadings, evidence, exhibits, arguments of counsel, receiving testimony, and authorities for their respective positions, and in conformity with and pursuant to the **Memorandum Opinion** entered herewith, it is

**ORDERED, ADJUDGED, and DECREED** that the relief sought in Paulette R. Holmes' Complaint to Determine Dischargeability of Debt is **DENIED** pursuant to 11 U.S.C. § 523(a)(8); and it is further

**ORDERED, ADJUDGED, and DECREED** that Paulette R. Holmes' debt owed to Defendant, United Student Aid, Inc. as successor in interest to Sallie Mae Loan Servicing Center by assignment from Sallie Mae Loan Servicing Center in the amount of $9,900.00 plus interest accruing at a fixed

---

**1.** Other factors are relevant:

1. Total incapacity now and in the future to pay one's debts for reasons not within the control of the debtor. *In re Rappaport*, 16 B.R. 615, 617 (Bankr.N.J.1981);

2. Whether the debtor has made a good faith effort to negotiate a deferment or forbearance of payment. *In re Rice*, 13 B.R. 614, 617 (Bankr.S.D.1981);

3. Whether the hardship will be long-term. *In re Bowen*, 37 B.R. 171, 172–73 (Bankr. M.D.Fla.1984);

4. Whether the debtor has made payments on the student loan. *In re Shoberg*, 41 B.R. 684, 688 (Bankr.Minn.1984);

5. Whether there is a permanent or long-term disability of the debtor. *In re Wilson*, 76 B.R. 19, 20 (Bankr.R.I.1987);

6. The ability of the debtor to obtain gainful employment in the area of study. *In re Bell*, 5 B.R. 461, 463 (Bankr.N.D.Ga.1980);

7. Whether the debtor has made a good faith effort to maximize income and minimize expenses. *In re Johnson*, 5 BCD 532, 537–38 (Bankr.E.D.Penn.1979);

8. Whether the dominant purpose of the bankruptcy petition was to discharge the student loans. *In re Johnson, supra;* and

9. The ratio of the student loan to the total indebtedness. *In re Erickson*, 52 B.R. 154, 159 (Bankr.N.D.1985).

*Lawson v. Hemar Service Corporation of America*, (*In re Lawson* ) 190 B.R. 955, 956–57 (Bankr. M.D.Fla.1995); *D'Ettore v. Devry Institute of Technology*, (*In re D'Ettore* ) 106 B.R. at 718.

annual rate of 8% is **Nondischargeable** pursuant to 11 U.S.C. § 523(a)(8)(B).