In re Angel L. LUNA and Marisela Cardona–Luna, Debtors.

Angel L. Luna and Marisela Cardona–Luna, Plaintiffs,

v.

Educational Credit Management Corporation, Defendant.

Bankruptcy No. 97–8663–3P7.
Adversary No. 98–292.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

July 28, 1999.

Howard Caplan, Jacksonville, FL, for plaintiff.

R. Raye Curry, Jacksonville, FL, for petitioner.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This proceeding is before the Court upon the Complaint filed by Plaintiff, Angel L. Luna, seeking the discharge of a debt owed to Defendant, Educational Credit Management Corporation, pursuant to 11 U.S.C. § 523(a)(8). A trial was held on July 7, 1999, and based upon the evidence presented, the Court enters the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. Plaintiff, Angel L. Luna, received certain federally guaranteed educational loans from 1990 to 1991, while he was a student at the Inter–American University of Puerto Rico. The total amount of $1,845.00 was disbursed to Plaintiff in the form of "federal Stafford" loans.

2. Payment for Plaintiff's educational loans first became due in 1992. Plaintiff requested and received two forbearances for a period totaling 9 months, during which time he made no payments on the educational loans.

3. Plaintiff filed a voluntary petition under Chapter 13 of the Bankruptcy Code on November 13, 1997. Plaintiff voluntarily converted his case to one under Chapter 7 on August 14, 1998.

4. Plaintiff commenced the instant adversary proceeding against United Student Aid Funds, Inc. on December 17, 1998. An Alias Summons and Notice of Pre–Trial Conference was issued on March 9, 1999. On March 26, 1999, Plaintiff's educational loans were assigned by United Student Aid Funds, Inc. to Educational Credit Management Corporation (hereinafter "ECMC").

5. ECMC filed a Motion for Substitution of Party Defendant Due to Transfer of Interest on April 8, 1999. ECMC also filed its Answer to the Complaint on April 8, 1999. The Court entered an Order Granting Motion for Substitution of Party Defendant on May 20, 1999, which allowed ECMC to substitute as party defendant for United Student Aid Funds, Inc.

6. The Court held a trial in this proceeding on July 7, 1999. At the trial, the Plaintiff, Angel L. Luna, testified that he was employed by the Jacksonville Trans-

portation Authority (hereinafter "J.T.A.") and that he had been employed there since 1994.

7. Mr. Luna testified that his net income was approximately $1,500.00 per month. He testified that he did not know whether he would receive any raise in his salary in the future, because it depended on whether his union negotiated a raise in the union contract. However, he testified that he had received several raises in salary, since the beginning of his employment with J.T.A. in 1994. Mr. Luna testified that when he began working at J.T.A. in 1994 he made a salary of $7.25 per hour and that his current salary was $12.04 per hour.

8. Mr. Luna further testified that he and his wife had two young children, who were dependent upon them for care. His testimony further showed that his wife was currently not working, due to illness, but that she would return to her job in August, 1999. Mrs. Luna's salary at her part-time job is approximately $300.00 per month.

9. Mr. Luna's testimony was that the monthly expenses for himself and his dependents was approximately $1,877 per month.

10. Mr. Luna received a refund for his federal income taxes for the 1998 taxable year in the amount of $2,900. Mr. Luna testified that he used the money to "pay some bills" and to purchase new furniture. Mr. Luna also received a refund for his federal income taxes for the taxable year 1997 in the amount of $1,394.00. This money was also used to pay bills and purchase items. Mr. Luna's educational loans were not among the bills paid with the two income tax refunds.

11. A copy of Mr. Luna's most recent pay stub receipt was introduced into evidence by counsel for ECMC as Defendant's Exhibit 1. Exhibit 1 evidenced that Mr. Luna has $117.84 deducted from his monthly paycheck for two separate life insurance policies. When questioned about the necessity for two separate life insurance policies, Mr. Luna testified that one of the policies (cost $5.33 per week) was required by his union contract. The second life insurance policy (cost $24.13 per week) was an optional policy purchased by Mr. Luna.

12. Defendant's Exhibit 1 also evidenced that Mr. Luna pays $10 per month for "fitness club dues" which is deducted from his pay check and that he pays $31.24 per month for union dues, which are also deducted from his pay check.

13. The current balance for Mr. Luna's educational loans, as of the date of the trial, was $1,646.79. Mr. Luna's monthly payments for the educational loans was approximately $50 per month. Mr. Luna has not made a payment on his educational loans since 1997.

14. Neither Mr. Luna, nor his wife or children, suffer from any physical or mental disability.

## CONCLUSIONS OF LAW

Section 523(a)(8) of the Bankruptcy Code provides that an educational loan is not dischargeable, unless "excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependants." Based upon the evidence presented, in order to find Mr. Luna's educational loans to be dischargeable, the Court would be required to find the existence of "undue hardship" within the meaning of § 523(a)(8).

As detailed by this Court in *In re Webb,* 132 B.R. 199 (Bankr.M.D.Fla.1991), the type of hardship envisioned by Congress under § 523(a)(8) is extraordinary circumstances that cause the debtor and/or his dependants extreme hardship if the educational loan is repaid, and that these circumstances will remain for the foreseeable future. As this Court stated in its *Webb* opinion, "... [M]ost or possibly all debtors could make a 'garden variety' hardship claim in good faith. Congress intended to require more than simply a

present inability to pay the obligation." *Webb*, 132 B.R. at 202.

 The evidence in this proceeding showed that the Plaintiff and his wife's combined income was approximately the same amount as their monthly expenses. However, it appears to the Court that Plaintiff's income will continue to increase over time. Mr. Luna has consistently received salary increases since the beginning of his employment at J.T.A., and, in all likelihood, will continue to receive salary increases in the future.

 The evidence also showed that the Plaintiff spent approximately $117 per month for optional life insurance polices and that he had received $4,300 in income tax refunds the two previous years. Plaintiff utilized his income tax refunds to pay certain unspecified bills and to purchase items such as furniture. A debtor is not free to pick and choose which bills he will pay and which bills he will not pay. One factor examined by bankruptcy courts in determining dischargeability under § 523(a)(8) is whether the debtor is attempting to minimize living expenses and maximize financial resources. *Webb*, 132

B.R. at 202; *In re Holmes*, 205 B.R. 336 (Bankr.M.D.Fla.1997). Clearly, Plaintiff has not attempted to minimize his living expenses, nor has he maximized his financial resources. Plaintiff is spending $117 per month for life insurance premiums, while his educational loan payments are only $50 per month. Plaintiff utilized substantial federal income tax refunds to pay certain bills, but not his educational loans, and to purchase new furniture.

The Court cannot find that payment of his educational loan will cause undue hardship to Plaintiff or his dependents. Therefore, pursuant to 11 U.S.C. § 523(a)(8), the debt owing to Defendant, Educational Credit Management Corporation, is not dischargeable.

A separate Judgment will be entered in accordance with the foregoing Findings of Fact and Conclusions of Law.