**In re Lydia D'ETTORE, Debtor.**

**Lydia D'ETTORE, Plaintiff,**

**v.**

**DEVRY INSTITUTE OF TECHNOLOGY, General Revenue Corporation and United Student Aid Funds, Inc., and HHL Financial Services, Inc., Defendants.**

**Bankruptcy No. 89–1915–8P7.
Adv. No. 89–185.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Oct. 5, 1989.

Charles W. Matthews, Tampa, Fla., for plaintiff.

Robert Goldhagen, Tampa, Fla., for defendant, Devry Institute.

Paul Catania, Tampa, Fla., for defendant, United Student Aid Funds.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS is a Chapter 7 case and the matter under consideration is the dischargeability vel non of certain debts owed to Devry Institute of Technology, General Revenue Corporation, United Student Aid Funds, Inc., and HHL Financial Services, Inc. (Defendants), by Lydia D'Ettore (Debtor). The Debtor filed a Complaint seeking determination by this Court that the debts owed to the Defendants are dischargeable pursuant to § 523(a)(8)(B) of the Bankruptcy Code. The debts in question are student loans which are excepted from discharge pursuant to § 523(a)(8) of the Bankruptcy Code unless excepting the debts from discharge will impose an "undue hardship" on the Debtor.

This Court heard testimony of witnesses and considered the documentary evidence, together with the record, and finds that the facts relevant to disposition of this matter as established at the final evidentiary hearing are as follows:

The Debtor studied computer programming at Devry Institute of Technology and graduated in October 1985 with a bachelor's degree. Her grade-point average was 2.51 out of a possible 4.00. She claims that she pursued employment in her trained field for approximately one year. But, she contends that she was unable to obtain employment in the computer programming field due to her lack of experience and her low grade-point average.

At this time, the Debtor is gainfully employed working as a general clerk for Metropolitan Life Insurance Company in Tampa, Florida. She has held that position since May 1988, and has received a raise this year to her current salary of approximately $12,500.00 per year. Prior to obtaining her present job, she held various temporary and permanent positions. The Debtor and her daughter live with the Debtor's father who provides them with free housing. In addition, the Debtor's father and mother pay for ballet, piano and gymnastic lessons for the Debtor's daughter.

The Debtor's 1986 tax return shows an adjusted gross income of $5,714.00. By 1988, her adjusted gross income had risen to $9,587.00 (Defendant's Exh. No. 1). Currently, her gross salary is approximately $12,500.00 (Debtor's Exh. No. 1). This salary yields a monthly net income of approximately $730.00. Although the Debtor's parents provide free housing and assistance in supporting her daughter, the Debtor receives no support payments from the father of her child. Even though she may be legally entitled to support payments, the Debtor claims that she has not pursued it as she "can't find the father." It is noteworthy that while the Debtor claims a net income of $730.00 per month from her salary, she has directed her employer to deduct $10.00 per month to purchase bonds and $38.82 per month for savings. Therefore, her actual monthly net income is closer to $780.00 per month from which she estimates $662.62 per month is needed for expenses. This leaves approximately $118.00 per month for other uses. Her cash flow is further enhanced by her tax refund which was $1,560.26 in 1988. The Debtor's monthly expenses include car payments of $232.69 to First Florida for a 1987 Suzuki Samurai which she purchased for $10,500.00 in 1987 and payments of $50.00 to Zales Jewelers for the purchase of rings.

The Debtor seeks to have the indebtedness evidenced by her student loans held dischargeable under the exception set forth in § 523(a)(8)(B) of the Bankruptcy Code. That section states as follows:

### § 523. Exceptions to discharge

(a) A discharge under section 727, 1141, 1228[a] 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—

(8) for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a nonprofit institution unless—

(A) such loan first became due before five years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

11 U.S.C. § 523(a)(8)(B).

When a debtor brings a complaint to determine dischargeability under the "undue hardship" exception, the burden of proof is split between the parties. The creditor must first establish the existence of the debt, that it is owed to or insured or guaranteed by a governmental agency or a nonprofit institution of higher learning, and that it first became payable less than five years prior to the date the bankruptcy petition was filed. *In re Norman*, 25 B.R. 545, 548 (Bankr.S.D.Ca.1982). In this case, it is undisputed that the five-year period

began in May 1985 and since the bankruptcy Petition was filed in March 1989, the five-year period has not passed. The Debtor admits in her Complaint that the debt is owed to, or insured or guaranteed by a governmental agency or a nonprofit institution of higher education.

■ The burden then shifts to the Debtor to prove "undue hardship". *In re Binder,* 54 B.R. 736, 739 (Bankr.N.D.1985). It is well established that statutes are to be interpreted so that they carry out the intent of the legislature. As a result, the bankruptcy courts have generally applied the § 523(a)(8)(B) "undue hardship" exception narrowly. *In re Keenan,* 53 B.R. 913, 918 (Bankr.Conn.1985). In studying the legislative history of § 523(a)(8)(B), it is clear that Congress was concerned about debtors with large amounts of school loans and few other debts who held well-paying jobs and filed bankruptcy after leaving school. *H.R.Rep. No. 595, 95th Cong., 1st Sess. 133 (1977), reprinted* in 1978 *U.S. Code Cong. & Admin.News,* 5787, 6094. This amendment to the Code was adopted in light of testimony that the bankruptcy rate involving student loans had increased significantly and that in some areas of the country, students were being counseled on filing for bankruptcy to discharge their obligations to repay guaranteed student loans. *H.R.Rep. No. 1232, 94th Cong., 2d Sess., 13–14 (1976).* It was felt by some members of Congress that the amendment was necessary to prevent the rise in the default rate on student loans from jeopardizing the student loan program altogether.

■ Thus, the mere fact that repayment of the student loan may impose a hardship on the debtor is not enough to permit dischargeability. *In re Collier,* 8 B.R. 909, 911 (Bankr.S.D.Ohio 1981). Indeed, most or possibly all debtors could make a "garden variety" hardship claim in good faith. Congress intended to require more than simply a present inability to pay the obligation. However, the words, "undue hardship" are not defined in the Bankruptcy Code; instead, they are words of art to be interpreted by the court. *In re Courtney,* 79 B.R. 1004, 1010 (Bankr.N.D.

Ind.1987). The determination of whether repayment of the student loan will cause "undue hardship" is inherently a question of fact for the court to decide based upon the particular circumstances of the bankruptcy case. *In re Andrews,* 661 F.2d 702, 704 (8th Cir.1981).

■ The bankruptcy court in *In re Coleman,* 98 B.R. 443 (Bankr.S.D.Ind.1989) provided an exhaustive analysis of the factors which various bankruptcy courts have considered in determining whether or not "undue hardship" exists. While none of the factors taken alone will prove or disprove "undue hardship", the following factors are relevant to the disposition of this cause:

1) Total incapacity now and in the future to pay one's debts for reasons not within the control of the debtor. *In re Rappaport,* 16 B.R. 615, 617 (Bankr.N.J.1981);

2) Whether the debtor has made a good faith effort to negotiate a deferment or forbearance of payment. *In re Rice,* 13 B.R. 614, 617 (Bankr.S.D.1981);

3) Whether the hardship will be long-term. *In re Bowen,* 37 B.R. 171, 172–173 (Bankr.M.D.Fla.1984);

4) Whether the debtor has made payments on the student loan. *In re Shoberg,* 41 B.R. 684, 688 (Bankr.Minn.1984);

5) Whether there is permanent or long-term disability of the debtor. *In re Wilson,* 76 B.R. 19, 20 (Bankr.R.I.1987);

6) The ability of the debtor to obtain gainful employment in the area of study. *In re Bell,* 5 B.R. 461, 463 (Bankr.N.D.Ga. 1980);

7) Whether the debtor has made a good faith effort to maximize income and minimize expenses. *In re Johnson,* 5 B.C.D. 532, 537–38 (Bankr.E.D.Penn.1979);

8) Whether the dominant purpose of the bankruptcy petition was to discharge the student loans. *In re Johnson, supra* at 540–541;

9) The ratio of the student loan to the total indebtedness. *In re Erickson,* 52 B.R. 154, 159 (Bankr.N.D.1985).

In the present case, while the Debtor does not earn an extraordinarily high income, it is clear that she has the ability to repay the student loan indebtedness. In fact, the Debtor is able to pay not only the student loan indebtedness, but also car payments of $232.69 for her non-economy car and payments to Zales Jewelers for frivolous luxury purchases of jewelry. Any alleged "undue hardship" which the Debtor may suffer is no more than a mere "garden variety hardship" that is suffered by all bankruptcy debtors, and if there is any hardship at all, it is clearly self-imposed due to the extravagant purchases of the Debtor.

The Debtor's financial status has improved in that her income has more than doubled in the past three years. It is expected that her future income of the Debtor will continue to rise and that her future ability to repay the student loans will only increase. There has been no showing that the Debtor has made any good faith effort to negotiate affirmative forbearance or to make any payments on the student loan. She has accepted the benefits of the education which she obtained through the use of the school loans, but she seeks to deny her responsibility for repayment of the debt without even a showing of an inability to make payments. Her allegation that it is impossible to obtain work in the computer field is highly suspect and is rejected.

Furthermore, the debts which the Debtor seeks to have discharged total $20,516.52. Student loans constitute 82% of this amount. It seems clear that one of the dominant purposes of the bankruptcy Petition was to discharge student loans. Considering the ratio of the student loan to the total indebtedness sought to be discharged, this Court finds that it is being asked to act in a manner contrary to the intent of Congress in enacting § 523(a)(8)(B). This Court refuses to do so.

In light of the foregoing, it is clear that the Debtor has not met her burden of proof in showing "undue hardship" and that the Complaint to determine dischargeability of student loans should be dismissed with prejudice.

A separate Final Judgment will be entered in accordance with the foregoing.

DONE AND ORDERED.