**In re Aretta D. FOREMAN, Debtor.**

**Aretta D. FOREMAN, Plaintiff,**

v.

**HIGHER EDUCATION ASSISTANCE FOUNDATION, Defendant.**

**Bankruptcy No. 3–89–01413.**
**Adversary No. 3–89–0152.**

United States Bankruptcy Court, S.D. Ohio, W.D.

Aug. 29, 1990.

Hugh R. Tankersley, Dayton, Ohio, for plaintiff/debtor.

Eileen K. Field, Cincinnati, Ohio, for defendant.

## DECISION GRANTING JUDGMENT TO DEFENDANT HIGHER EDUCATION ASSISTANCE FOUNDATION

WILLIAM A. CLARK, Bankruptcy Judge.

This matter has been submitted to the court for decision on the basis of a stipulation of facts and legal memoranda of the parties. The court has jurisdiction pursuant to 28 U.S.C. § 1334 and the standing order of reference entered in this district. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I)—determinations as to the dischargeability of particular debts.

### FACTS

Plaintiff-debtor, Aretta D. Foreman, has filed a complaint alleging that payment of her student loan to the defendant, Higher Education Assistance Foundation, would impose an "undue hardship" upon her and requests the court to discharge the loan pursuant to § 523(a)(8)(B) of the Bankruptcy Code. The defendant requests that the debtor's student loan be found nondischargeable under § 523(a)(8) and prays for an award of its attorneys' fees and costs of collection.

The parties have stipulated to the following facts:

1) On June 8, 1989, the debtor filed a complaint to determine dischargeability of a student loan;

2) The debtor's student loan does not fall within the exception of 11 U.S.C. § 523(a)(8)(A) in that the loan did not first become due before five years prior to the date of the filing of the debtor's bankruptcy petition;

3) The only issue to be decided by the court is whether, under § 523(a)(8)(B), excepting the debtor's student loan from discharge will impose an undue hardship on the debtor and her dependent;

4) On or about August 27, 1987, the debtor executed a promissory note payable to the order of First America Savings Bank F.S.B. in the principal amount of 2,625.00. The note provided for interest at 8% per annum;

5) The note requires the debtor to pay reasonable attorneys' fees and costs of collection;

6) The note evidences a student loan to the plaintiff under a program funded by a governmental unit;

7) There was a tuition refund of $763.00, which was applied to the note;

8) The revised repayment schedule established for the note provided for 38 consecutive monthly payments of $54.02 each, beginning April 7, 1989, and a final payment of $71.31;

9) The debtor has made payments totaling $20.00, but otherwise has defaulted in her obligation to repay the note in accordance with its terms, and such default is continuing;

10) The defendant has accepted a claim made under the terms of its guaranty and the note was endorsed and assigned to the defendant;

11) The unpaid principal and interest balance due under the note was $1,932.51 as of April 8, 1989;

12) Interest continues under the note on the principal balance thereunder at the rate of 8% per annum simple interest, accrued daily;

13) The defendant has offered to reduce the payment schedule to $30.00 per month until paid in full (interest to accrue at the rate in the note and all other terms in the note to continue as contained therein);

14) Attorney fees incurred by the defendant to date in this matter are $624.00 and are expected to total approximately $900.00;

15) The debtor utilized the proceeds of the guaranteed student loan to attend school for training. The debtor did not complete the course. The schooling has not added to her employment skills;

16) The debtor does not suffer from any physical or mental disability and is presently employed by ARA Services;

17) The debtor's employment history, as presented in the stipulation, is as follows:
"Steak-N-Eggs Kitchen
1975–1978, everything, cashier, cook, $1.85 per hour; no proper uniform
Mississippi Baptist Hospital
1979–1982, all duties, $3.25 per hour, because of abusive language
Self-employed
1983–1985, cared for older woman; $200 per week; working at night and it was dangerous so she quit
Knights Inn
February through May 1986, housekeeper, $3.35 per hour; too far out
May through August 1986, took care of elderly woman who wanted live-in and she didn't want to live in
1986–1988, unemployed
July 1989, ARA Services, utilities; $4.65 per hour; presently employed."
(Doc. No. 9)

18) The debtor works forty hours per week, and her pay is $186.00 per week gross ($152.00 per week net);

19) The debtor has a son, thirteen years of age, who is mentally retarded. She receives Social Security Income payments for him of approximately $368.00 per month. The amount varies with the amount of her paycheck. The debtor has a medical card for her son. She pays the first $13.00 and then uses the medical card for the balance;

20) The debtor also has medical insurance through American Community Mutual Insurance Company (80/20 coverage);

21) The debtor has a high school education;

22) The debtor spends the sums in her budget as listed in the debtor's chapter 7 bankruptcy schedules;

23) The debtor's assets are listed in the debtor's chapter 7 bankruptcy schedules;

24) The poverty level income for a family of two for 1990 is $8,420.00 (Source, Federal Register Vol. 55, No. 33, Page 5665).

## CONCLUSIONS OF LAW

Section 523(a)(8) of the Bankruptcy Code provides that section 727 does not discharge an individual debtor from any debt—

> (8) for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a non-profit institution, unless—
>> (A) such loan first became due before five years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or
>> (B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

Here, the parties have stipulated that the loan under consideration was an educational loan "made, insured, or guaranteed by a governmental unit" and that § 523(a)(8)(A) is inapplicable because the loan first became due before five years before the debtor filed her petition in bankruptcy. The only issue before the court is whether excepting the student loan from discharge will impose an *undue* hardship on the debtor and her dependent.

■ In contrast to the usual dischargeability case, it is the debtor who bears the burden of proof in this adversary proceeding and who must demonstrate the undue hardship of paying her student loan. *D'Ettore v. Devry Institute of Technology (In re D'Ettore)*, 106 B.R. 715, 718 (Bankr.M.

D.Fla.1989); *Conner v. Illinois State Scholarship Commission (In re Conner)*, 89 B.R. 744, 747 (Bankr.N.D.Ill.1988).

Bankruptcy courts are in general agreement that in student loan dischargeability litigation based upon undue hardship, the burden of proof is upon the debtor for the reason that the assertion of undue hardship is in the nature of an affirmative defense or an exception to the exception of such a debt from discharge. *Connecticut Student Loan Foundation v. Keenan (In re Keenan)*, 53 B.R. 913, 916 (Bankr.Conn.1985).[1]

■ Although neither the Bankruptcy Code nor its legislative history defines the meaning of "undue hardship," "[i]t is almost universally accepted that the undue hardship referred to at Section 523(a)(8) contemplates unique and extraordinary circumstances." *Strauss v. U.S.A. (Dept. of Education) (In re Strauss)*, 91 B.R. 872, 873–874 (Bankr.E.D.Mo.1988). The statute refers to *undue* hardship and the mere fact that repayment of an educational loan imposes *a* hardship is insufficient to permit discharge of the loan. "Indeed, most or possibly all debtors could make a 'garden variety' hardship claim in good faith." *In re D'Ettore, supra*, 106 B.R. at 718.[2] As a result, bankruptcy courts have narrowly construed § 523(a)(8)(B) of the Bankruptcy Code. *In re Keenan, supra*, 53 B.R. at 918.

In response to the lack of a definition of "undue hardship" in either the statute or its legislative history, numerous courts have utilized a three-part "progressive" test to determine whether "undue hardship" exists. *See, e.g., Gearhart v. Clearfield Bank and Trust Co. (In re Gearhart)*, 94 B.R. 392 (Bankr.W.D.Pa.1989); *Cahill v. Norstar Bank of Upstate New York (In re Cahill)*, 93 B.R. 8 (Bankr.N.D.N.Y.1988); *Courtney v. Gainer Bank (In re Courtney)*, 79 B.R. 1004 (Bankr.N.D.Ind.1987); *Lohman v. Connecticut Student Loan Foundation (In re Lohman)*, 79 B.R. 576 (Bankr.Vt.1987); *Marion v. Pennsylvania Higher Education Assistance Agency (In re Marion)*, 61 B.R. 815 (Bankr.W.D.Pa.1986); *Binder v. U.S. Dept. of Education (In re Binder)*, 54 B.R. 736 (Bankr. N.D. 1985). This three-tier analysis of undue hardship was first enunciated in *Pennsylvania Higher Education Assistance Agency v. Johnson (In re Johnson)*, 5 B.C.D. 532 (Bankr.E.D.Pa.1979) and consists of the following three tests:

1) a mechanical test
2) a good faith test
3) a policy test[3]

In determining undue hardship, the court's inquiry progresses through the three stages of analysis and, "if the court finds against the Debtor at any particular stage, its inquiry ends and the debt will not be dischargeable in bankruptcy." *North Dakota State Board of Higher Education v. Frech (In re Frech)*, 62 B.R. 235, 240 (Bankr.Minn.1986).

---

**1.** "This allocation is consistent with the legislative history of Code § 523(a)(8) which indicates that this 'provision is intended to be self executing and the lender or institution is not required to file a complaint to determine the nondischargeability of any student loan.' S.Rep. No. 95–989, 95th Cong., 2d Sess. 79 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5865." *In re Keenan, supra*, 53 B.R. at 917.

**2.** "[T]he clear language chosen by the drafters of the Code indicates that the type of hardship involved in this particular circumstance must be uniquely significant, and not merely a general difficulty, for it is presumed that all debtors in bankruptcy are beset with general financial difficulties." *Bey v. Dollar Savings Bank (In re Bey)*, 95 B.R. 376, 377 (Bankr.W.D.Pa.1989). "[T]he debtor must show that any repayment of the loan would be *more* than an inconvenience,

cause a reduction in lifestyle or work a hardship on the debtor or his/her family." *Conner v. Illinois State Scholarship Commission (In re Conner)*, 89 B.R. 744, 747 (Bankr.N.D.Ill.1988).

**3.** Under the "good faith test," the debtor must demonstrate that she is actively minimizing current household living expenses and maximizing her personal resources. In applying the "policy test," the court determines whether allowing discharge of a given educational loan would constitute the abuse of bankruptcy remedies with which Congress is concerned. *In re Frech, supra*, 62 B.R. at 241.

Because the debtor in this proceeding has not succeeded in overcoming the first hurdle (the "mechanical test") in proving undue hardship, it is unnecessary to further elaborate upon the other two tests.

Under the "mechanical test" the court examines a variety of factors in the debtor's vocational profile, e.g., the debtor's current employment and income, future employment and income prospects, educational level, work skills, health, and family support responsibilities. *Id.* In addition, the court examines the debtor's current household expenses with respect to reasonableness in kind and amount and compares them with the debtor's income to calculate a debtor's current income surplus, if any. *Id.* The "mechanical test," "in essence, requires a showing that the debtor's financial resources during the foreseeable future will not be sufficient to support the debtor or her dependents at a subsistence or poverty level standard of living, and still be able to repay the loan obligations." *Erickson v. North Dakota State University (In re Erickson)*, 52 B.R. 154, 157 (Bankr. N.D.1985).

█ In the case before the court, the debtor's bankruptcy schedules list $714 as her monthly expenses. The debtor's total monthly disposable income is $971 and consists of approximately $653 in take-home pay and $318 in social security benefits.[4] As a result, the debtor has unbudgeted or "surplus" income of $257 per month. Taken alone, the debtor's schedules of income and expense do not demonstrate that it would be an undue hardship for her to pay $30 of the unbudgeted $257 per month to the defendant. In addition, although the debtor does not enjoy a high level of income, her total annual income of $11,720 is 38% above the poverty income level of $8,420 for a family of two in 1990.

Not only does a strict monetary analysis fail to reveal an undue hardship to the debtor, but an examination of the other circumstances that might demonstrate undue hardship is also unavailing to the debtor. There is no evidence that the debtor will be unable to retain her employment or is likely to suffer a decrease in income in the near future. Given the debtor's educational level and employment history, it appears quite likely that she will be able to sustain her current level of income. Also, the debtor does not suffer from any physical or mental disability that might adversely affect her ability to work. The court is sympathetic, of course, to the fact that the debtor is supporting and caring for her mentally retarded son. However, the debtor has not shown that there are any expenses (either existing or anticipated) for her child that are not already included in her budget of expenses.

Based on an examination of the factors associated with the mechanical test, the court finds that the debtor has not made a showing that her financial resources during the foreseeable future will not be sufficient to repay her educational loan and to support her and her son above a poverty level standard of living. Also, there is no evidence of any unique or extraordinary circumstances that entitle the debtor to a discharge from her student loan.

The defendant has also requested that it be awarded its reasonable attorneys' fees and costs of collection. In Ohio, however, it is settled law that stipulations incorporated in promissory notes for the payment of attorneys' fees, if the principal and interest are not paid at maturity, are contrary to public policy and void. *Miller v. Kyle*, 85 Ohio St. 186, 97 N.E. 372 (1911). Therefore, the request for attorneys' fees and costs of collection will not be granted.

Judgment will be entered in accordance with the court's decision forthwith.

## JUDGMENT DETERMINING DEBT TO BE NONDISCHARGEABLE

In accordance with the Decision filed this day, it is hereby ORDERED, ADJUDGED, and DECREED that the debt of Aretta D. Foreman to the Higher Education Assistance Foundation is determined to be nondischargeable pursuant to 11 U.S.C. § 523(a)(8) and that judgment is granted to the Higher Education Assistance Foundation in the amount of $1,932.51 plus inter-

---

**4.** A debtor's sources of income include both earned and unearned income. *In re Johnson, supra,* 5 B.C.D. at 536. Subsequent to the parties' stipulation of facts, the debtor's social security benefits were reduced from $368 per month to $318.

est of 8% per annum on the unpaid principal balance from April 8, 1989 and costs.