**In re Eileen FOLEY aka Eileen Spaitz aka Eileen Herbert, Debtor.**

**Eileen FOLEY, Plaintiff,**

**v.**

**ELSC, Sallie Mae, Wachovia SFS, Inc., and United Student Aid Funds, Inc., Defendants.**

**Bankruptcy No. 93–11477–8B7. Adv. No. 94–235.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Jan. 29, 1996.

V. John Brook, Jr., St. Petersburg, FL.

Charles A. Medearis, St. Petersburg, FL.

Christie D. Arkovich, Ross & Burton, P.A., Tampa, FL.

Cherry Cox, United Student Aid Funds, Inc., Indianapolis, IN.

Stephen L. Meininger, Trustee, Tampa, FL.

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

PAUL M. GLENN, Bankruptcy Judge.

**THIS CASE** came before the Court to consider the Complaint to Determine Dischargeability of Student Loan filed by Eileen Foley, the Debtor in this Chapter 7 case (Debtor). In her Complaint, the Debtor alleges that she owes ELSC the approximate amount of $7,000, that she owes Sallie Mae the approximate amount of $7,500, and that she owes Wachovia SFS, Inc. the approximate amount of $3,800. The Debtor further alleges that these obligations arise from stu-

dent loans, and that payment of the loans would impose an undue hardship on the Debtor within the meaning of Section 523(a)(8)(B) of the Bankruptcy Code. Consequently, the Debtor requests that the Court determine that the debts are dischargeable pursuant to Section 523(a)(8)(B).

On May 16, 1994, United Student Aid Funds, Inc. (USA Funds) filed a Motion to Be Joined as Additional Defendant Due to Transfer of Interest. USA Funds asserts that the student loans were made under a program funded by a governmental unit; that the holders of the written obligations (collectively, the "Promissory Notes") evidencing the student loans had made claims pursuant to contracts for the guaranteed payment of the loans; that USA Funds had accepted the claims; and that the Promissory Notes had been assigned to USA Funds. USA Funds also filed an Answer to the Complaint and a Counterclaim against the Debtor alleging that the obligations are not dischargeable pursuant to Section 523(a)(8) of the Bankruptcy Code.

In 1986, 1987, 1988, 1989, and 1990, the Debtor obtained a series of loans to fund her college education. Each of the loans was insured or guaranteed by a governmental unit, or made under a program funded in whole or in part by a governmental unit. The Debtor attended St. Petersburg Junior College and subsequently Eckerd College, both in St. Petersburg, Florida, and ultimately received her Bachelor of Arts degree from Eckerd College in 1991.

In December of 1992 and again in April of 1993, the Debtor requested and obtained forbearance agreements with respect to the repayment of her educational loans, apparently on the basis that she had been unable to find permanent employment and had experienced medical problems requiring surgery.

The Debtor filed her petition under Chapter 7 of the Bankruptcy Code on November 2, 1993. On her schedule of assets filed in the Chapter 7 case, the Debtor listed her homestead valued at approximately $62,000, which is encumbered by a mortgage in the approximate amount of $47,000, and personal property, including a 1984 Buick, with a total value of $1,250. In her schedule of liabilities,

the Debtor listed her mortgage with GMAC Mortgage Corporation, the student loans, and approximately $15,500 in miscellaneous unsecured debts, including various credit card obligations.

The Debtor is 45 years old. She was born in Scotland, and spent the early years of her life there. In the early 1970's, she moved to Canada where she has a sister. In the mid–1980's, she moved to Florida and married. Prior to filing her petition, the marriage was dissolved, and she receives no income from her former husband. At this time, she is single and has no dependents.

The Debtor is currently employed part-time at St. Petersburg Junior College. Her wages are calculated on an hourly basis, and she typically works twenty hours per week. Her budget as of May 1, 1995, shows net income of $832 monthly. Her monthly expenses on this budget are $1,235.

The Debtor commenced this adversary proceeding by filing a Complaint on April 7, 1994, and seeks a determination that her student loans are dischargeable under Section 523(a)(8)(B) of the Bankruptcy Code. The parties filed a Joint Pre-trial Statement in the adversary proceeding on August 1, 1994. The parties agree that the Debtor owes the guaranteed student loans in the total amount of $12,933.01. The Debtor concedes that the loans first became due less than seven years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the Debtor's Chapter 7 case.

The only issue in this matter is whether excepting the student loans from discharge would impose an undue hardship on the Debtor.

Section 523(a)(8) provides that an individual debtor is not discharged from any debt for an educational loan made, insured, or guaranteed by a governmental unit, or made under a program funded in whole or in part by a governmental unit, or for an obligation to repay funds received as an educational benefit, unless (1) the loan first became due more than seven years before the petition was filed, exclusive of any suspension of the repayment period, or (2) excepting the debt

from discharge would impose an undue hardship on the debtor and the debtor's dependents.

■ The existence of undue hardship is a question of fact to be determined based upon the particular circumstances of each case. *In re D'Ettore,* 106 B.R. 715, 718 (Bankr. M.D.Fla.1989). Courts that have interpreted the undue hardship exception generally have considered several factors in determining whether the circumstances of a particular case constitute the type of undue hardship contemplated by Congress. In *In re Roberson,* 999 F.2d 1132 (7th Cir.1993), the Seventh Circuit adopted the test initially established by the Second Circuit in *Brunner v. New York State Higher Education Services Corp.,* 831 F.2d 395 (2d Cir.1987). To establish undue hardship under this three-part test, a debtor must show (1) that the debtor would not be able to maintain a minimal standard of living if required to repay the loans; (2) that the situation is likely to persist for a significant portion of the repayment period; and (3) that the debtor has made a good faith effort to repay the loans. *Roberson,* 999 F.2d at 1135. In *In re Cheesman,* 25 F.3d 356 (6th Cir.1994), the Sixth Circuit acknowledged the *Brunner* test, and also acknowledged other tests focusing on whether the debtor's estimated future income would contain any surplus which would allow payment on the student loan without impairing the debtor's minimal standard of living. The Sixth Circuit did not expressly adopt any test, however, since it determined that the loans at issue in that case were dischargeable regardless of which test was used.

In Florida, Bankruptcy Courts have applied similar tests. In *In re Garcia,* 135 B.R. 437 (Bankr.S.D.Fla.1992), the Bankruptcy Court recited the *Brunner* factors, and then determined that the debtor in that case did not establish undue hardship because there was no showing that the debtor's inability to repay the student loans would be long-term, or that the debtor had attempted to minimize her expenses. *Garcia,* 135 B.R. at 439. In *In re Webb,* 132 B.R. 199 (Bankr.M.D.Fla. 1991), the Bankruptcy Court found that the student loans were not dischargeable, again because there was no evidence that the debt-

or's inability to make payments was permanent. The debtor did not prove that she would be able to live only at a poverty level for the foreseeable future if she were required to repay the student loans. *Webb,* 132 B.R. at 202.

Finally, the Bankruptcy Court in *In re D'Ettore,* 106 B.R. 715 (Bankr.M.D.Fla.1989), compiled a list of the various factors applied in determining whether "undue hardship" exists. These factors include: (1) the present and future inability of the debtor to pay his debts for reasons not within his control; (2) the debtor's good faith efforts to negotiate deferment or forebearance of payment; (3) the permanent nature of the hardship; (4) the debtor's payment efforts; (5) whether the debtor has a permanent or long range disability; (6) the ability of the debtor to obtain gainful employment in the area of study; (7) the debtor's efforts to minimize expenses and maximize income; (8) whether the dominant purpose of the bankruptcy was to discharge the student loans; and (9) the ratio of the student loans to the debtor's total indebtedness. *D'Ettore,* 106 B.R. at 718. In analyzing these factors, courts should consider that "Congress intended to require more than simply a present inability to pay the obligation." *Id.*

■ In this case, the Court finds that the Debtor has established that the exception of the student loans from her general discharge would impose an undue hardship on her.

The Debtor's major in college was English Literature, and her academic performance was outstanding. After graduating in May, 1991, she sought employment, looking for academic, administrative, and clerical jobs. While seeking employment, she worked in part time and temporary jobs, and even received public assistance in the form of food stamps. In May, 1992, she finally obtained full time employment, in a clerical position at St. Petersburg Junior College. Difficulties resulted in discrimination claims by the Debtor against her employer. Her full time employment ceased, and the Debtor began the part time position with St. Petersburg Jr. College which she presently holds. Since accepting the part-time position, the Debtor has attempted to obtain full-time employ-

ment. She has sent out numerous resumes, and has maintained contact with employment agencies and services. The Debtor speaks with a Scottish accent, and attributes some of her difficulty in securing a job to this accent. For employment in an academic position, she indicates that she would need a Masters degree. She further indicates that budget cutbacks have created a tight job market for clerical jobs. The Court concludes that the Debtor has been sincere and persistent in her efforts to obtain employment. Regardless of the cause, it is clear that the Debtor is having substantial difficulty securing employment, and it does not appear that the Debtor's prospects for employment will improve.

The Debtor has attempted to minimize her expenses. Her monthly budget is not extravagant in any respect. She is frugal with her expenses, even purchasing food and clothing at thrift stores, and her budget does not include any luxury items.

The Debtor has made a good faith attempt to pay the student loans or to obtain forbearance agreements until she was financially capable of repaying the obligations. As set forth above, she requested and received forbearance agreements on two occasions in December of 1992 and April of 1993. Further, she attempted to pay at least a portion of the obligations in accordance with a payment schedule arranged with Eckerd College. Specifically, she paid a total of approximately $300 commencing with a lump sum payment in December of 1992, followed by monthly payments through November of 1993.

The Debtor's liabilities other than the student loans are substantial. She scheduled unsecured claims, apart from the student loans, in the approximate amount of $15,500. Consequently, her other unsecured liabilities exceed the amount of the student loans, and are not de minimis. The Debtor's purpose in filing her Chapter 7 case is not merely to discharge the educational debt.

The Debtor suffers from asthma, and has experienced other medical difficulties in recent years.

The test for establishing an undue hardship as set out by the Second Circuit Court of Appeals in *Brunner, supra*, and adopted by the Seventh Circuit Court of Appeals in *Roberson, supra*, has been met: (1) the Debtor would be unable to maintain a minimal standard of living if she were required to repay the loans; (2) the Debtor's dire financial condition is likely to exist for a significant portion of the repayment period; and (3) the Debtor has made a good faith effort to repay the loans.

The existence of an undue hardship in this case is also established under the *D'Ettore* factors. (1) The inability to obtain employment with materially higher compensation is not within the control of the Debtor. (2) The Debtor has made a good faith effort to negotiate a deferment or forbearance of payment, and has in fact negotiated forbearance agreements. (3) The hardship will be long term. (4) The Debtor has made payments on the loans. (5) The Debtor's medical conditions cause her expenses to be a little higher than they otherwise would be. Although she does not have a permanent or long term disability which effects her employment, she does attribute some of her difficulty with employment to the fact that she is from Scotland and speaks with a distinct accent. (6) The Debtor is unable to obtain employment in the area of her study. (7) The Debtor has made good faith efforts to minimize expenses and maximize income. (8) The dominant purpose of the bankruptcy petition was not to discharge the student loans. (9) The student loan indebtedness does not overshadow the other indebtedness.

Finally:

The legislative history behind the student loan exception indicates that Section 523(a)(8) was enacted in response to the increasing number of bankruptcies of former students motivated primarily by the desire to avoid repayment of student loans. As a result of the rising incidence of student bankruptcies, the student loan programs throughout the nation were jeopardized. Section 523(a)(8) was directed, therefore, at preventing young, intelligent and healthy graduates from easily obtaining a discharge of student loan debts.

*In re Connolly*, 29 B.R. 978, 981 (Bankr. M.D.Fla.1983) citing *In re Wegfehrt*, 10 B.R.

826 (Bankr.N.D.Ohio 1981) (citing Report of the Commission of the Bankruptcy Laws of the United States, H.R.Doc. No. 137, 93rd Cong. 1st Sess., Pt. II, p. 140, n. 14 (1973)).

This Debtor is not motivated primarily by the desire to avoid repayment of the student loans. She is and has been living at a very minimum standard, and the Court does not believe that she continues to live as she does by her own choosing, or because of her desire to discharge these loans. The Court believes that she has made good faith efforts to obtain better employment, that she has been unable to, and that she will be unable to for the foreseeable future.

After considering all of the circumstances in this case, the Court finds that the Debtor has established more than just a present inability to repay the student loans. She has acted in good faith and with proper motives, and she has made diligent efforts to obtain full-time employment and manage her finances over an extended period of time. The Court finds that the Debtor's inability to locate full-time employment is long-term and not due to any fault of her own. The exception of the student loans from her discharge would impose an undue hardship on the Debtor within the meaning of Section 523(a)(8)(B).

Accordingly:

**IT IS ORDERED** that the claims held by ELSC, Sallie Mae, Wachovia SFS, Inc., and United Student Aid Funds, Inc. are determined to be dischargeable in the Chapter 7 case of Eileen Foley. A separate Final Judgment on the Complaint to Determine Dischargeability of Student Loan shall be entered in favor of Eileen Foley and against ELSC, Sallie Mae, Wachovia SFS, Inc., and United Student Aid Funds, Inc.